IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 22-05024-01-CR-SW-MDH |
| | ) | |
| BILLY HILE, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT & RECOMMENDATIONS

Before the Court is Defendant's Motion to Suppress Evidence and Statements. (Doc. 25.) This action has been referred to the undersigned for the purpose of submitting a report on any pretrial motions to suppress evidence. As follows, it is **RECOMMENDED** that the Motion to Suppress Evidence and Statements be **DENIED**.

### I.  Background

Defendant has been charged by indictment with possession with intent to distribute 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B), possession of firearm in furtherance of drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A), and possession of a firearm by a felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). (Doc. 1).

In his Motion, Defendant asks the Court "to suppress evidence, property seized, statements, and observations made based upon on his detention, arrest and search on September 15, 2021 in Lawrence County, Missouri." (Doc. 25 at 1.) In support, Defendant claims that "the evidence, property seized, statements obtained, and observations made were obtained by exploiting a violation of the Fourth Amendment to the United States Constitution." *Id.*

The Government filed Suggestions in Opposition to the Motion. (Doc. 30.) A suppression hearing was held on January 19, 2023. (Doc. 34.) Defendant appeared in person with his attorney, Thomas Carver, and the Government was represented by Assistant United States Attorney Jessica Eatmon. *Id*. Missouri State Highway Patrol Master Sergeant Steve Jones appeared and testified. *Id*.

II.     **Findings of Fact**

At approximately 10:20 p.m. on September 15, 2021, Sergeant Jones, a Master Sergeant with the Missouri State Highway Patrol, was patrolling westbound on U.S. 60 Highway in Lawrence County, when in his rearview mirror he "saw two bright yellow headlights shining to the point . . . that it was uncomfortable . . . to look at them." *Id.* at 5, 8, 30. He then pulled to the shoulder and waited for the vehicle to catch up to him, and subsequently conducted a traffic stop of Defendant, who was driving a 2015 Chevrolet Silverado registered in his name, for displaying headlights that were not substantially white, in violation of Missouri Revised Statute Section 307.095. *Id.* at 5, 8, 34–35.

When Sergeant Jones exited his vehicle and approached the Silverado, Defendant, the sole occupant of the vehicle, rolled down the window. *Id.* at 10. Immediately, Sergeant Jones observed a strong odor of marijuana. *Id.* at 11. He then identified himself to Defendant, explained the initial reason for the traffic stop. *Id.* When Sergeant Jones informed Defendant that his lights were the wrong color, Defendant acknowledged and said he didn't know that he couldn't have that color. *Id.* Additionally, Defendant stated that he recently bought the lights on the Wish app. *Id.* He then asked him for his license and insurance, and whether he had a medical marijuana card. *Id.* Defendant replied that he did have a medical marijuana card, at which time Sergeant Jones asked to see his medical marijuana card and his marijuana. *Id.* at 12.

Defendant presented his digital medical marijuana card to Sergeant Jones, as well as a clear glass jar with two Ziploc baggies inside. *Id.* at 13. Each baggy appeared to have a substantial amount of marijuana inside and were each written on with blue marker, labeled "Skittles" and "Gorilla Glue" respectfully. *Id.* at 13–14. Finding it suspicious that the marijuana wasn't in the required original dispensary packaging, Sergeant Jones asked Defendant where he bought the marijuana. *Id.* at 15–16. Defendant told Sergeant Jones that he bought it on the black market because it was cheaper than buying from a licensed dispensary. *Id.* at 17–18. Approximately three minutes passed between when Sergeant Jones approached the vehicle and when Defendant told him that he purchased the marijuana on the black market. *Id.* at 17. Sergeant Jones then asked Defendant when he last smoked marijuana, and Defendant answered that it had been "a couple hours earlier." *Id.* at 18. Sergeant Jones asked Defendant to exit his vehicle so that he could conduct a field sobriety test. *Id.* While performing the field sobriety test on Defendant, Sergeant Jones "saw some signs of impairment" but "didn't feel like an arrest for driving while intoxicated or in a drugged condition was appropriate in this situation." *Id.* at 18–19.

Subsequently, Sergeant Jones placed Defendant under arrest for unlawful possession of marijuana, explaining the reason for the arrest. *Id.* at 19. Sergeant Jones asked Defendant if there were any additional illegal items in his vehicle, and when he responded that there was not, Sergeant Jones asked for consent to search his vehicle. *Id.* at 19–20. Defendant replied that "he would rather [he] did not," and Sergeant Jones explained to Defendant that he nonetheless had probable cause to search his vehicle for evidence of the crime he was being arrested for. *Id.* at 20. After conducting a search of Defendant's person, Sergeant Jones found $4,795 in cash. *Id.*

Sergeant Jones then placed Defendant in his patrol car, read him his *Miranda* rights, and asked him again if he was going to find anything else illegal in the car, to which Defendant replied

that he didn't know. *Id.* at 21. Sergeant Jones then asked specifically whether he was going to find any other marijuana or anything else like that in the vehicle, to which the Defendant replied "probably." *Id.* After Sergeant Jones walked away from the patrol car, where Defendant was seated, the dashcam footage captured defendant saying the "F word." *Id.* at 22.

During his search of the vehicle, Sergeant Jones found a Glock Model 19 pistol located on the driver's side of the vehicle, and after running the serial number, he determined that the firearm was reported stolen out of Boone County, Arkansas. *Id.* at 22–23. Additionally, he also discovered that Defendant was prohibited from possessing a firearm at that point in time. *Id.* at 23. Sergeant Jones also found numerous items of drugs and drug paraphernalia inside a nylon tackle box style container, including a marijuana grinder and GladWare style tubs, one empty with marijuana residue, and the other full of a substance that was later confirmed by a field test to be methamphetamine. *Id.* at 23–24. Sergeant Jones also found a nylon case with multiple glass pipes inside as well as a box of .9-millimeter ammunition located inside Defendant's vehicle. *Id.* at 24.

Sergeant Jones then returned to the vehicle and informed Defendant that he was under arrest for the additional charges and asked him if he would like to speak about where he got the contraband, to which Defendant replied he did not. *Id.* at 25. When asked how much marijuana and methamphetamine he had on him, Defendant replied that he thought that all together he had about 3 ounces of marijuana and about 2 ounces of methamphetamine. *Id.* When asked where he got his methamphetamine, Defendant told Sergeant Jones that he sometimes buys it locally, but he did not buy this batch in Lawrence County and did not want to tell him where it came from. *Id.* Sergeant Jones was also able to ascertain that Defendant paid about $400 for the methamphetamine and that there was more than that to start with. *Id.* at 25–26.

At that point, Sergeant Jones transported Defendant to Lawrence County Jail. *Id.* at 26. During the car ride, Defendant was permitted to make a phone call to a friend, during which he told his friend that "they found that gun. It's stolen and they're hooking me for everything." *Id.* After the phone call, Sergeant Jones asked Defendant if he sold the methamphetamine and he said that he did not but rather "just has some friends that he parties with." *Id.* at 26–27. Defendant also indicated that he knew he was a prohibited possessor of a firearm as a convicted felon, when asked, and indicated that he'd had the gun for a couple of months. *Id.* at 27. Additionally, before arriving at the jail, Defendant informed Sergeant Jones that he had another bag down his pants that contained both methamphetamine and marijuana. *Id.* at 28–29. When Sergeant Jones inspected the bag, he found a glass methamphetamine pipe, additional baggies of methamphetamine, cocaine, and a container that he believed to be mushrooms. *Id.* at 29.

### III. Conclusions of Law

In his Motion, Defendant raises several arguments for the suppression of "evidence, property seized, statements, and observation made based upon on his detention, arrest and search on September 15, 2021, in Lawrence County, Missouri." (Doc. 25 at 1.) Specifically, Defendant asserts that Sergeant Jones did not have reasonable suspicion or probable cause to initially conduct a traffic stop of Defendant, thus violating Defendant's Fourth Amendment rights to be free of unreasonable searches and seizures. *Id.* at 5–6. Defendant also argues Sergeant Jones impermissibly extended the length of the traffic stop, past the time to issue a ticket for the traffic violation. *Id*. at 3–4. The undersigned takes up the arguments below.[1]

---

[1] Rather than address Defendant's arguments in the order he presented, the Court will take up Defendant's arguments in the order that it finds most logically flows.

### A. The initial traffic stop was supported by probable cause.

Defendant contends that the initial detention of the vehicle was unsupported by reasonable suspicion or probable cause in violation of the Fourth Amendment. (Doc. 25 at 5–6.) The Court disagrees.

American citizens are protected from unreasonable seizures by the Fourth Amendment. U.S. Const. amend. IV. A "traffic stop is reasonable if it is supported by either probable cause or an articulable and reasonable suspicion that a traffic violation has occurred." *United States v. Washington*, 455 F.3d 824, 826 (8th Cir. 2006). Minor traffic violations provide probable cause for traffic stops. *United States v. Green*, 946 F.3d 433, 438 (8th Cir. 2019) (citing *United States v. Harris*, 617 F.3d 977, 979 (8th Cir. 2010)). Additionally, "a traffic stop comports with the Constitution when the officer reasonably believes that the vehicle has committed a traffic infraction, even if the vehicle did not actually commit such an infraction." *United States v. Miller*, 915 F.3d 1207, 1209 (8th Cir. 2019). "The determinative question is not whether a traffic violation had actually occurred, but 'whether an objectively reasonable police officer could have formed a reasonable suspicion that [the driver] was committing a code violation.'" *United States v. Cox*, 992 F.3d 706, 709 (8th Cir. 2021) (quoting *United States v. Martin*, 411 F.3d 998, 1001 (8th Cir. 2005)).

Sergeant Jones pulled Defendant over in his vehicle the evening of September 15, 2021, for violating Mo. Rev. Stat. § 307.095, which provides that "[h]eadlamps, when lighted, shall exhibit lights substantially white in color." Sergeant Jones testified that he "looked in [his] rearview mirror and saw two bright yellow headlights shining to the point -- right to the point that it was uncomfortable for [him] to look at them." (Doc. 34 at 8.) Defendant argues that Mo. Rev. Stat. § 307.095 is void for vagueness and subsequently unconstitutional because "the phrase,

'lights substantially white in color,' is of such poor description that it cannot not give notice to a driver if the lights on his or her vehicle meet the statutory definition." (Doc. 25 at 5.)

Defendant's void for vagueness argument fails because Mo. Rev. Stat. § 307.095 was presumptively valid at the time Sergeant Jones pulled Defendant over. A statute provides sufficient probable cause for a traffic stop if the statute was presumptively valid at the time the officer conducted the traffic stop, whether or not the statute was to be found unconstitutional after the traffic stop. *See United States v. Gregory*, 302 F.3d 805, 808–09 (8th Cir. 2002) ("We do not address the constitutionality of the statute, for even if we were to find it unconstitutional, Gregory's argument would not prevail because the following-too-closely subsection was presumptively valid at the time the officer pulled Gregory over to enforce it."); *Michigan v. DeFillippo*, 443 U.S. 31, 40 (1979) ("The subsequently determined invalidity of the Detroit ordinance on vagueness grounds does not undermine the validity of the arrest made for violation of that ordinance, and the evidence discovered in the search of respondent should not have been suppressed.").

As such, the undersigned concludes that Sergeant Jones' initial traffic stop of Defendant comported with the Fourth Amendment rights against unreasonable seizures, and as to this basis, the motion should be denied.

**B. The traffic stop was reasonably extended due to reasonable suspicion.**

Defendant argues that even if he was permissibly stopped, Sergeant Jones impermissibly extended the length of the stop, past the time to issue a ticket for violating Mo. Rev. Stat. § 307.095. (Doc. 25 at 3–4.) Again, the Court disagrees.

"To establish an unreasonably prolonged detention, the defendant must show that the officer detained him beyond the amount of time otherwise justified by the purpose of the stop and did so without reasonable suspicion." *United States v. Donnelly*, 475 F.3d 946, 951–52 (8th Cir.

2007); *see also United States v. Pacheco*, 996 F.3d 508, 511 (8th Cir. 2021). "Reasonable suspicion requires an officer to have a particularized and objective basis for suspecting legal wrongdoing based upon his own experience and specialized training." *United States v. Pacheco*, 996 F.3d at 511 (citation omitted). "Although an officer's reliance on a mere 'hunch' is insufficient to justify a stop, . . . the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *United States v. Arvizu*, 534 U.S. 266, 274 (2002) (cleaned up). In determining whether an officer had reasonable suspicion, the Court considers the totality of the circumstances. *See id.* at 273.

Here, Sergeant Jones smelled marijuana immediately after he approached Defendant's vehicle with the window rolled down. (Doc. 34 at 10.) Sergeant Jones then asked Defendant if he had a medical marijuana card, and when the Defendant replied in the affirmative, Sergeant Jones asked to see Defendant's medical marijuana card and his marijuana. *Id.* at 12. Defendant claims that producing a medical marijuana card should have ended Sergeant Jones's inquiry, further contending that "in times past [the odor of marijuana] would have been sufficient to initiate a probable cause search of Mr. Hile [sic] person and vehicle but with the advent of Missouri's legalization of medical marijuana, it is no longer axiomatic that the smell of marijuana amounts to probable cause." (Doc. 25 at 4.) However, Defendant: (1) produced approximately two ounces of marijuana packaged in plastic, Ziploc-style baggies labeled with blue marker; (2) told Sergeant Jones that he bought the marijuana from the black market because it was cheaper than buying it at a licensed dispensary; and (3) admitted that he had last smoked marijuana approximately two hours earlier. (Doc. 34 at 13–18.)

8

Case 3:22-cr-05024-MDH   Document 35   Filed 02/27/23   Page 8 of 11

Defendant's argument fails because once he produced a felony amount of marijuana and admitted he had purchased it illegally, Sergeant Jones had probable cause to arrest him for a violation of Mo. Rev. Stat. § 579.015.  See *United States v. Parish*, 606 F.3d 480, 486 (8th Cir. 2010) (quoting *United States v. Velazquez-Rivera*, 366 F.3d 661, 664 (8th Cir. 2004) ("'Probable cause to make a warrantless arrest exists when, considering all the circumstances, police have trustworthy information that would lead a prudent person to believe that the suspect has committed or is committing a crime'.").  Mo. Rev. Stat. § 579.015 provides that "[a] person commits the offense of possession of a controlled substance if he or she knowingly possesses a controlled substance, except as authorized by this chapter or chapter 195."

Furthermore, although the Missouri Constitution was amended to provide for legalization of medical marijuana in 2018, as Defendant contends, the amendment was "not intended to change current civil and criminal laws governing the use of marijuana for nonmedical purposes . . . and does not allow for the public use of marijuana and driving under the influence of marijuana." Mo. Const. art. XIV, § 1(1).  Article XIV provides that "[a]ll marijuana for medical use sold in Missouri shall be cultivated in a licensed medical marijuana cultivation facility located in Missouri."  Mo. Const. art. XIV, § 1(3)(21). Additionally, Article XIV explicitly states that only qualifying patients who are "in compliance with department regulations and other standards of legal conduct," are immune to criminal liability under Missouri law.  Mo. Const. art. XIV, § 1(5)(9).  At the point when Defendant admitted to buying his marijuana on the black market, rather than a licensed medical marijuana dispensary, Sergeant Jones had probable cause to believe that Defendant was in violation of Mo. Rev. Stat. § 579.015.

Ultimately, the undersigned concludes that Sergeant Jones' extension of the traffic stop was supported by sufficient probable cause, and thus that Defendant's Fourth Amendment rights

against unreasonable seizures were not violated. As such, as to this basis, the motion should be denied.

### C. The search of Defendant's vehicle was supported by probable cause.

Defendant argues that the smell of marijuana did not provide sufficient probable cause for Sergeant Jones to conduct a search of Defendant's person and vehicle because medical marijuana has been legalized. (Doc. 25 at 3.) Again, the Court disagrees.

The Eighth Circuit has held that under the automobile exception to the search warrant requirement "[a] police officer has probable cause to conduct a [legal] search when the facts available to him would warrant a person of reasonable caution in the belief that contraband or evidence of a crime is present." *United States v. McGhee*, 944 F.3d 740, 742–43 (8th Cir. 2019) (cleaned up). As previously discussed, although medical marijuana is in fact legal, Defendant admitted to Officer Jones that he had bought the marijuana on the black market. Consequently, this gave Officer Jones probable cause to search Defendant's vehicle for black market marijuana. *See United States v. Coleman*, 700 F.3d 329, 336 (8th Cir. 2012) ("If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search.").

As a result, the undersigned concludes that Sergeant Jones' search of Defendant's vehicle was supported by probable cause, and thus that Defendant's Fourth Amendment rights against unreasonable seizures were not violated. Therefore, as to this basis, the motion should be denied. Accordingly, any evidence, derived as a result of the traffic stop as well as the subsequent search of Defendant's vehicle, including any property seized, statements obtained, and observations made, need not be suppressed as fruits of the poisonous tree. As such, as to this basis, the motion should be denied.

## IV. Recommendations

For the above reasons, it is hereby **RECOMMENDED** that Defendant's Motion to Suppress Evidence and Statements be **DENIED**.

/s/ David P. Rush
DAVID P. RUSH
UNITED STATES MAGISTRATE JUDGE

DATE: February 27, 2023